IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


RICKY R. GARCIA,

        Petitioner,

v.                                              CIV 97-1449 BB/KBM

JOHN SHANKS, et al., Warden,

        Respondents.


PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Ricky Garcia's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, filed November 10, 1997, *Doc. 1,* and Respondents' Answer and Motion to Dismiss, *Docs. 12, 13.* The referral of this case was transferred to me on December 22, 2000, and Petitioner is represented by counsel.[1] I find that part of the limitations issue can be resolved on the record, such that an evidentiary hearing is unnecessary at this time. *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 121 S. Ct. 93 (2000); Rule 8(a), *Rules Governing Habeas Corpus Under Section 2254.* Having considered the arguments, pleadings, and relevant law, I recommend that the petition be found untimely if based solely on the April 23, 1997 state habeas filing.

However, I also find the record is inadequate to determine whether a second state habeas

_____

[1] Gail Evans, Director of the Habeas Corpus Rule Change Project was counsel for Petitioner at the outset. *See Doc. 6; Doc. 15, Exh. E.* Subsequently, William L'Esperance was appointed to Represent Petitioner. *Docs. 19.* In his surreply, Mr. L'Esperance adopts the arguments raised by Ms. Evans in her initial response. *See Docs. 26, 15.*

proceeding apparently filed January 5, 1996, and which may be still pending, would render the federal petition timely.  Therefore, I also recommend that the parties expand the record and file additional briefs on the limitations issue.  *See* Rule 7(a), *Rules Governing Habeas Corpus Under Section 2254* ("[i]f the petition is not dismissed summarily the judge may direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition.")

## I.  Limitations Period

Because Garcia filed his federal petition after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a one-year statute of limitations applies to this case.  *E.g., Gibson v. Klinger,* 232 F.3d 799, 803 (10th Cir. 2000).  AEDPA identifies different triggering events for the limitations period.  Here the applicable provision is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

For convictions that became final before April 24, 1996, habeas petitioners have a one-year grace period, or April 23, 1997, within which to file their federal petition.  The limitations period is tolled while state post-conviction proceedings are "pending."  28 U.S.C. § 2244(d)(2) ("time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is *pending* shall not be counted.") (emphasis added); *see also Gibson*, 232 F.3d at 803.  In certain limited circumstances, excusing noncompliance with the one-year limitations period may be appropriate.  *Id.* at 808; *Miller v. Marr,* 141 F.3d 976, 978 (10th Cir.), *cert. denied,* 525 U.S. 891 (1998).

## II. Analysis

### A. Background

Following the jury's verdict of guilty, in November 1981 Garcia was sentenced to death for the murder of correctional Officer Lewis Jewett and to life imprisonment for the murder of Reynaldo Garcia. *See Answer, Exh. A* (referred to as case number "SF 81-70" throughout the pleadings).[2]  The verdict and sentences were affirmed by the New Mexico Supreme Court on January 20, 1983. *See State v. Garcia,* 99 N.M. 771 (N.M. 1983).  The Supreme Court of the United States denied certiorari on June 6, 1983. *Garcia v. New Mexico,* 462 U.S. 1112 (1983).

While the appeal was pending, Garcia pleaded no contest to the murders of Archie Manuel in case number SF 81-194 and Daniel Baca in case number SF 92-136.  On May 4, 1982, he was sentenced to nine years and to life imprisonment, respectively, for these murders. *Exhs. B, C.* These last two sentences were not appealed.  In November 1986, Governor Toney Anaya commuted Garcia's death sentence for the murder of Officer Jewett to life imprisonment. *Exh. D.*

There is no indication that Garcia pursued post-conviction relief in state or federal court the 1980's.  In 1993, he was transferred to a prison in California and filed federal civil rights complaints and a petition under 28 U.S.C. § 2254 (later construed as a complaint under 42 U.S.C. § 1983) challenging the transfer.  In those suits, he argued that he had been denied access to the courts because the California facility did not have New Mexico materials.  The relief he sought was a transfer back to a New Mexico prison.  His claims were denied on the merits by this Court.

---

[2] Unless otherwise noted, all references to exhibits are those attached to Respondents' Answer.

One of the decisions was appealed and affirmed by the Tenth Circuit on September 11, 1998.[3]

Garcia also filed a state habeas petition on January 5, 1996, again seeking a transfer back to New Mexico on the ground that he had been denied access to the courts. *Doc. 15 (Exh. C).* In this petition he asserted that while incarcerated in New Mexico before the 1993 transfer, he

> was pursuing and preparing appellant (sic) relief for presentation to the New Mexico State Courts. And civil litigation to be presented to the federal courts in New-Mexico[.] All preparation of habeas corpus applications and other post-conviction remedies, and civil litigation *had to be entered in state and federal courts pro-se.*

*Id. at 4-5* (emphasis added). Noting that his federal complaint in CIV 93-1286 had been dismissed in January 1995, he claimed that the lack of "professional or quasi-professional legal help," *id.* at 5, lack of mail privileges, and lack of New Mexico legal materials "forced [him] to suspend his seeking relief from the judgment and sentences imposed," *id.* at 6. The record does not reveal what happened with the state petition.

In March 1997, more than a year after the state habeas case seeking a transfer was filed, the Habeas Corpus Rule Change Project sent out-of-state prisoners information about AEDPA. *Id. (Pl. Exh. E).* By letter dated April 13, 1997 to Gail Evans, Director of the Project, Garcia indicated that he had received the information and filled out the state habeas petition he had been sent, hoping that the "N.M. Public Defender or someone" could assist him in filing it. *Id. (Pl.*

---

[3] In *Garcia v. Hoover,* CIV 93-1177 JP/RWM, filed on October 7, 1993, he sought a temporary restraining order, which was denied as moot on October 25, 1993. In *Garcia v. Hoover,* CIV 93-1286 JB/LFG, immediately filed after the first suit on November 2, 1993, he sought injunctive relief, which was denied on December 6, 1993. Summary judgment was subsequently granted in favor of defendants on January 18, 1995. *Garcia v. Hoover,* CIV 96-449 MV/LCS was filed on April 3, 1996 under § 2254, but construed as § 1983 claim. Garcia's request for a transfer was denied on February 18, 1997 and the case later dismissed on October 31, 1997. It was this decision that was affirmed on appeal by the Tenth Circuit.

*Exh. D)*.  The project provided him assistance by filing the petition with the state court on April

23, 1997, the last day of the grace period.  *See Doc. 5 (sealed ex parte motion by Ms. Evans).*

This state petition challenged all four murder sentences noted above and raises a total of

ten categories of claims.  As for the Garcia/Jewett murder convictions, he raised six categories:

due process violations,[4] ineffective assistance of trial and appellate counsel,[5] lack of impartial

jury,[6] insufficient evidence of premeditation because the stabbing of Officer Jewett was accidental;

insufficient evidence of cause of death because Officer Jewett had received poor medical care; and

counsel's failure to inform Garcia of further post-conviction procedures following commutation

of his sentence.  For both the Manuel and Baca murder pleas, he raised identical arguments:

ineffective assistance of counsel[7] and involuntary plea.[8]  *Id., Exh. L.*

The trial court summarily dismissed this state petition without discussion on July 22, 1997.

---

[4]  Specifically:  that the trial court failed to instruct that homicide had to be "unlawful," admitted Officer Jewett's statement as a dying declaration, admitted evidence that Garcia was the member of  prison gang that intended to run the prison and deal drugs, admitted evidence that Garcia threatened another officer and other homicide charges were pending against Garcia.

[5]  Specifically:  that counsel failed to adequately investigate, failed to obtain transcripts to impeach state witnesses, left during trial, failed to prepare and defend the claim of self-defense, failed to present evidence of lack of premeditation, failed to request correct jury instruction on homicide, and failed to raise the instructions issue on appeal or other unspecified "numerous errors."

[6]  Specifically:  that jurors talked to other people on the phone about the case, a juror was a police officer, and another juror was the son of the former secretary of corrections.

[7]  Specifically:  that counsel failed to inform Garcia of the consequences of his plea, to litigate suppression motions, and to adequately investigate defenses and possible outcome of trial with those defenses.

[8]  Specifically:  Garcia was incompetent, counsel did not inform Garcia of potential defenses to the charges, and breach of plea agreement.

*Id., Exh. M.*   The New Mexico Supreme Court ordered the state to file a response to Garcia's

petition for a writ or certiorari, which it did, and the court then summarily denied the writ on

Wednesday, November 5, 1997 without discussion.  *Id., Exhs. O-Q.*  Garcia's federal petition for

the most part tracks his state petition.

## B.  Petition Was Untimely Based On The April 23, 1996 State Habeas Proceedings

The convictions for which Petitioner seeks review became final more than a decade before

the effective date of AEDPA.  Because Garcia's state habeas petition was commenced on the last

day of the grace period,[9] he only had one day in which to file his federal petition to comply with

the one-year statute of limitations after state post-conviction proceedings were no longer pending.

In several unpublished cases, the Tenth Circuit has enforced the limitations period after noting

that the petitioner only had one day left to file after conclusion of the state proceedings.[10]

---

[9]   The state petition is dated April 23, 1997 next to what appears to be Petitioner's
signature on the certificate of mailing, and is file stamped that day by the court.  In his surreply,
Mr. L' Esperance argues that the date Petitioner "filed" his state habeas should be calculated from
the date he mailed it (April 14, 1997) and argues that the date he mailed the petition can be
inferred from the date on his state motion to proceed *in forma pauperis.*  (Attached to the sealed
*ex parte* motion for appointment of counsel.  *Doc. 5.*).  However, the Tenth Circuit held that a
"properly filed" pleading in New Mexico for the purposes of § 2244(d) is calculated from the date
it is received by the clerk.  *Adams v. LeMaster,* 223 F.3d 1177, 1182-1183 (10th Cir. 2000) ("We
are convinced New Mexico's rules require, at the very least, receipt by the clerk before a petition
is filed. . . .  We hold the New Mexico Supreme Court would side with those state courts relying
on the plain meaning of their respective state procedurals rules to reject the prison mailbox
rule."), *petition for cert. filed 12/21/00.*  Furthermore, Petitioner did not mail the materials to the
clerk, he mailed them to Ms. Evans at the Project.  Thus, the date that the state petition was
"properly" filed with the state court was April 23, 1997.

[10] *See Hicks v. Kaiser,* 2000 WL 27694 (10th Cir. 1/14/00) (assuming that April 23, 1997
filing would trigger tolling, notes that it left but one day on limitations period); *Barber v. Hargett,*
2000 WL 339230 (10th Cir. 3/31/00) ("On April 23, 1997, petitioner filed an application for post-
conviction relief in the state district court.  This served to toll the limitations period one day
before it was to expire."); *Lewis v. Boone,* 1999 WL 1244477 (10th Cir. 12/20/99) ("Such filing
would leave only one day of the limitations period remaining after denial of state post-conviction

The New Mexico Supreme Court denied certiorari on Wednesday, November 5, 1997.

Ms. Evans received notice of the denial on Saturday, November 8, 1997 and filed the federal

petition the following Monday, November 10, 1997.  In her initial response, Ms. Evans argued

that she filed within one day <u>if</u> the date from which post-conviction proceedings "conclude" is the

date that she received notice of the denial.  *See Doc. 15, at 7.*

This appears to present a matter of first impression in this district and circuit.  In cases, as

here, where the state supreme court does deny certiorari, the Tenth Circuit uniformly defines

cessation of "pending" as the date of the denial.  *E.g., Adams v. LeMaster,* 223 F.3d 1177, 1180

(10th Cir. 2000) ("until July 21, 1997, when the New Mexico Supreme Court denied certiorari"),

*petition for cert. filed 12/21/00.*  Based on my research, I have found only one unreported Tenth

Circuit decision mentioning an argument to adopt a "notice" rule, but finding that it was

unnecessary for the panel to decide the issue:

> Appellant asserts that, under a "reverse application"of *Houston v.
> Lack,* [487 U.S. 266, 275-76 (1988)], he should be entitled to
> credit for the five days that elapsed between the denial of his
> petition for certiorari and his notice of the denial.  On the facts of
> this case, we need not resolve this issue.  Even if the tolling period
> were extended by the additional days [he filed five days before the
> end of the grace period], appellant failed to meet the statutory time
> limit.

*Williams v. Lytle,* 185 F.3d 876, n. 4 (10th Cir. 1999) (unpublished).

I also have not located a decision that adopts counsel's position.  On the other hand, the

few decisions from other courts all decline to adopt a "notice rule" and hold, as the Tenth Circuit

---

relief.").

has, that the relevant date is the date the final opinion (*i.e.,* the certiorari denial) was issued.[11]

Because the Tenth Circuit defines cessation of pending as the date the opinion is issued, in the absence of a decision to the contrary, I find the decisions cited above are persuasive and recommend that the district judge decline to adopt a "notice" rule.  Accordingly, counsel had one day from November 5, 1997 to file the federal petition and did not do so until November 10, 1997.  In the interim, the statute of limitations expired.

### B.  Suspension of Writ and Equitable Tolling

Petitioner appears to argue that the one-year statute of limitations violates the Suspension Clause and that it is "unfair" to have required him to file immediately after the state denied certiorari.  *See Doc. 15 at 6, 14.*  "[W]hether the one-year limitations period violates the Suspension Clause depends upon whether the limitation period renders the habeas remedy 'inadequate or ineffective' to test the legality of detention. . . .  The burden is on the petitioner to

---

[11] *Evans v. Senkowski,* 105 F. Supp. 2d 97, 100 (E.D.N.Y. 2000) ("It is argued that the AEDPA clock should not begin to run until Petitioner's actual receipt of the ruling . . .   There is no provision in AEDPA that extends the toll of the statute of limitations until actual notice of a ruling is received. . . .   Indeed, the Second Circuit has recently made clear that a motion is 'pending' for AEDPA purposes not until notice of a final action is received but, rather only from the time the motion is filed until it is decided."); *Donovan v. State,* 2000 WL 1827237 at *3 (D. Me. 12/12/00) ("petitioner also contends that his state post-conviction proceeding should be considered to have been pending for the purposes of section 2244(d)(2) until he received notice of the law Court's denial of his request for a certificate of probable cause. . . .  While section 2244 does not define 'pending,' the petitioner's argument has been rejected by the reporting courts that have considered it. . . .  I find the reasoning of these courts to be persuasive;" see also cases cited therein); *Lilly v. Newland,* 1998 WL 699067 at *2 (N.D. Ca. 9/30/98) ("Petitioner argues that . . . collateral relief must be deemed 'pending' in state court under § 2244(d)(2) . . . to the date he received notice from the courts that each application was denied. . . .  there is no rule that extends the pendency of an action until a prisoner receives actual notice that the action was terminated and this court declines to adopt any such sweeping rule."), *vacated on other grounds, Nino v. Galaza,* 183 F.3d 1003, 1006-1007 (9th Cir. 1999) (court noted statute "was tolled until the California Supreme Court denied his petition for review "), *cert denied,* 120 S. Ct. 1846 (2000).

demonstrate inadequacy and ineffectiveness." *Miller,* 141 F.3d at 977.  Uniformly, the circuits

have rejected that the limitations period violates the Suspension Clause *per se.  E.g., Wyzykowski*

*v. Department of Corrections,* 226 F.3d 1213, 1217 & n. 3 (11th Cir. 2000); *Green v. White,* 223

F.3d 1001, 1004 (9th Cir. 2000); *Miller,* 141 F.3d at 978.

In summary, there was only one day left on the limitations period based upon the date

Garcia commenced state post-conviction proceedings.  That alone is insufficient to meet the

burden of demonstrating the federal habeas remedy is inadequate or ineffective.  As previously

noted, the Tenth Circuit has enforced a one-day period within which to file.

### 1.  No Grounds For Equitable Tolling

In *Miller,* however, the Tenth Circuit indicated that by establishing equitable tolling or

actual innocence/incompetence, a petitioner may present situations where noncompliance with the

statute of limitations would be excused.  Equitable tolling is only available in only in "rare" and

"extraordinary" circumstances such as "when a prisoner is actually innocent . . . [or] when an

adversary's conduct – or other uncontrollable circumstances – prevents a prisoner from timely

filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during

the statutory period." *Gibson,* 232 F.3d at 808.  "Simple excusable neglect" is not enough –

Garcia must demonstrate that he diligently pursued his federal claims.  *Id.*  Petitioner's initial

response and surreply note that he was in lockdown status at a prison out of state, without access

to a law library and New Mexico or a jailhouse assistant, and that he was unaware of the AEDPA

deadlines.

*Pro se* status does not warrant equitable tolling.  *Marsh v. Soares,* 223 F.3d 1217, 1220

(10th Cir. 2000) (citing *Smith v. McGinnis,* 208 F.3d 13, 18 (2nd Cir. 2000)), *petition for cert.*

*filed 12/22/00.* It is also "well established that 'ignorance of the law, even for an incarcerated *pro se* petition, generally does not excuse prompt filing.'" *See id.* (citing *Miller,* 141 F.3d at 978). Furthermore "a claim of insufficient access to relevant law, such as AEDPA, is not enough to support equitable tolling." *Gibson,* 232 at 808 (citing *Miller,* 141 F.3d at 978). This is true even if the prisoner is housed out of state and "lacked access to federal statutes and [New Mexico case law]." *Miller,* 141 F.3d at 978; *see also McKimble v. Saffle,* 232 F.3d 901 (10th Cir. 2000) (unpublished) ("Claims of inadequate access to lawbooks due to prison transfers are far too general" to justify equitable tolling."). Because counsel is not required in post-conviction proceedings, any miscalculation on the part of counsel or inmate assistants is not grounds to toll the statute. *See e.g., Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir. 2000) ("An attorney's miscalculation of the limitations period or mistake is not a basis for equitable tolling."); *Taliani v. Charans,* 189 F.3d 597, 598 (7th Cir. 1999); *see also Marsh,* 223 F.3d at 1220 (citing *Steed*).

Petitioner argues that the one-day period should be equitably tolled because state post-conviction relief was diligently pursued during the grace period. However, it was Petitioner's delay in filing the state habeas petition at the outset that left him with a single day to file the federal petition. Like the Tenth Circuit in *Miller,* I note there is no explanation for Garcia's "lack of pursuit of his federal claims before [his] transfer." *Miller*, 141 F.3d at 978.[12] The record in this matter and this Court's own records of Garcia's prior litigation establish that he was not

---

[12] *See also Akins v. United States,* 204 F.3d 1086 (11th Cir. 2000) (lockdown status during grace period not grounds for equitable tolling where no explanation for failure to file during years preceding lockdown), *cert. denied,* 121 S. Ct. 410 (2000); *Essence v. Senkowski,* 2000 WL 1760908 (E.D.N.Y. 2000) ("[hardships associated with prison conditions do not constitute the rare circumstances under which equitable tolling is granted" and cases cited therein re: solitary confinement, transfers, lockdown).

10

diligent in pursuing post-conviction relief in the late 1980's and early 1990's.  He abandoned

whatever plans he had concerning post-conviction relief, pursuing instead litigation in this Court

and state court in an attempt to get transferred back to New Mexico.  His arguments of lack of

access to the courts as the grounds for retransfer were rejected.  Significantly, his access to the

courts in attempting to get transferred back to New Mexico belies a finding that he was impeded

in any way from pursuing post-conviction relief.  Therefore, I find no grounds for equitable

tolling.

### 2.  Actual Innocence/Competency

In his surreply, counsel argues that Garcia "has consistently expressed his relative

innocence."  Apparently this refers to Garcia's contentions that an accident and poor health care

resulted in Officer Jewett's death, self-defense regarding inmate Garcia's and Baca's death, and

the claims of "diminished capacity" regarding his pleas.  Therefore, counsel argues, Garcia falls

within the "innocence/competency" exception announced in *Miller*.  *Doc. 26, at 4.*

Although *Miller* indicated that it is Petitioner's burden to show actual innocence or

competency, the Tenth Circuit has not defined the required showing in a published decision.  In

one unpublished decision, it noted:

> even if the actual innocence of a defendant provided a basis for
> tolling the statute of limitations, a matter which we need not decide,
> no such tolling is warranted here, because defendant has not
> presented a valid claim of actual innocence.  The Supreme Court
> has held that a defendant in a collateral proceeding who wishes to
> establish his actual innocence to avoid a procedural bar to
> consideration of the merits of his underlying claim must
> 'demonstrate that, in light of all the evidence, it is more likely than
> not that no reasonable juror would have convicted him.' *Bousley v.*
> *United States,* 523 U.S. 614, 623 (1998) . . . .  At least one other
> circuit has applied this same standard in judging a claim of actual

11

innocence for purposes of tolling AEDPA's one-year statute of limitations.  *See Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 114 (2nd Cir. 2000), [*cert. denied,* 121 S. Ct. 175 (2000)].

* * * * *

Because defendant has made no showing that he is *factually* innocent . . . there is no basis for tolling the statute of limitations here.  Therefore, we need not decide 'whether the Constitution requires an 'actual innocence' exception to AEDPA's statute of limitations.'  *Id.* at 114.

*United States v. Stubbs,* 2000 WL 1174656 (10th Cir. 8/18/00) (emphasis added).

A recent district court decision applied the same test as that in *Lucidore*, explaining that

Claims of actual innocence are extremely rare and are based on factual innocence and not mere legal insufficiency. . . .  Such a claim fails where the petitioner's actual innocence claim consists of nothing more than an unsupported allegation. . . .  Rather, . . . the claim requires satisfaction of two requirements:  An actual innocence claim requires [the petitioner] to show [1] new reliable evidence . . . not presented at trial establishing [2] that it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence. . . .

[T]he petitioner cannot make the required new evidence showing where for example, the factual basis for the affidavits he relies on as new evidence existed at the time of trial and could have been presented earlier, . . . or where the allegation consists of no more than an assertion that trial counsel's failure to investigate the circumstances of the crime probably caused the petitioner's death sentence. . . .  The evidence must not only be new, but reliable. . . .

[E]ven if the evidence is, or is assumed to be, new, the petitioner must also show . . . it is more likely than not that no reasonable juror would have found petitioner guilty.

*Nuendorf v. Graves,* 110 F. Supp. 2d 1144, 1159-60 (N.D. Iowa 2000) (applied in jury trial context); *see also Lucidore,* 209 F.3d at 114 (applied in plea context).

Here, Garcia's claims fail for several independent reasons.  First, he merely raises

12

unsupported allegations.  Second, his claims of self-defense and competency to enter a plea do not

relate to factual innocence.  Third, his claims are not based on new evidence.  And fourth, there is

no basis for concluding that no reasonable juror would have convicted him of the murders.

Accordingly, I find this argument without merit.

**D.  Further Briefing is Required on the Effect of the January 5, 1996 State Habeas Petition**

The record does not disclose the disposition of Garcia's January 5, 1996 state habeas

petition and the effect, if any, this suit has on tolling the limitations period.  Therefore, I

recommend that the record be expanded and the parties brief the issue.  To expedite matters, they

may do so in their objections to this recommendation.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT** Respondents' Motion to Dismiss be denied

as to the April 23, 1997 state petition and that the record be expanded and briefed on the effect of

the January 5, 1996 petition on the limitations period.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period  if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE